In the Interest of MAH a Child










 





IN THE
TENTH COURT OF APPEALS
 

No. 10-02-00234-CV

IN THE INTEREST OF M.A.H., A CHILD

 
From the 220th District Court
Bosque County, Texas
Trial Court # 01-08-23001-BCFM
                                                                                                                
                                                                                                         
MEMORANDUM OPINION
                                                                                                                

      Destiny Dawn Merritt appeals the termination of her parental rights to M.A.H. in an
action brought by M.A.H.’s father, Christopher M. Herzog (Chris). Merritt complains that
the evidence is legally and factually insufficient to support the jury’s verdict in favor of
terminating her rights. She also complains about the broadform submission of the termination
question, and she argues that the court abused its discretion in failing to grant Merritt’s motion
for new trial on grounds that the court’s failure to appoint attorneys for Merritt and M.A.H.
seriously prejudiced her. We agree that the evidence is factually insufficient; accordingly, we
will reverse and remand.
 
BACKGROUND



      M.A.H. was born on January 4, 1999. During Merritt’s pregnancy and for the first
twenty-one months of M.A.H.’s life, Chris provided no support and was not present. After
Merritt applied for governmental assistance, the state attorney general’s office sued Chris for
retroactive child support. At this point, Chris was married to Heather and helping to raise
their infant son, T.H. On October 18, 2000, an order establishing the parent-child relationship
found Chris to be M.A.H.’s biological father and appointed him as possessory conservator,
with supervised visitation rights for the first twenty periods of possession and thereafter with
unsupervised visitation rights in accordance with the standard possession order. Chris was
also ordered to pay nearly three thousand dollars in retroactive child support.
      Within three weeks of the order, Chris took M.A.H. for an overnight visit with his family. 
This was his third visit with M.A.H. ever. According to Chris and his wife Heather, M.A.H.
had a severe diaper rash, and the diaper bag that Merritt gave him contained soiled clothing
and lacked adequate supplies. Chris testified that because of this incident and because of the
unkempt condition of Merritt’s house on the two occasions he exercised his supervised
visitation, he reported Merritt to Child Protective Services. In November, Chris then took
M.A.H. from Merritt’s grandmother’s house where Merritt and her child S.W. also lived. He
returned the child ten days later after Merritt brought police officers to his home to enforce her
child custody order. In January 2001, the court modified the orders affecting M.A.H.,
granting Merritt and Chris joint managing conservatorship, but giving Chris the right to
determine the child’s primary residence. M.A.H. returned to Chris’s home, where she
remained until this trial.
      At trial, evidence about the parties, their children and their history dating back to before
1998 was admitted. However, the court instructed the jury in writing, in reading his charge
aloud, and in response to an objection by Merritt’s attorney that they were to consider only
evidence that occurred after October 18, 2000. In her closing argument, the ad litem attorney
recommended that the jury not terminate Merritt’s parental rights.
BROADFORM SUBMISSION
      Merritt complains that the court’s broadform submission of the termination issue deprived
her of her right to procedural due process. She did not object to this at trial. We cannot
review unpreserved complaints about charge error. In re B.L.D., 113 S.W.3d 340, 349–51
(Tex. 2003). This issue is overruled.
LEGAL AND FACTUAL SUFFICIENCY
      We have reviewed the record in light of the legal and factual sufficiency standards
articulated in In re C.H. and In re J.F.C. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002); In re
J.F.C., 96 S.W.3d 256, 265–67 (Tex. 2002). At trial, Merritt testified that since March 29,
1999, she has been involved with David Brown, who is serving ten years of deferred
adjudication on child molestation charges to which he pled no contest. Brown, who has
unsupervised summer visits with his two young daughters, denies the abuse, as does Merritt.
Both testified that they wish to marry, but each also said that they would separate if necessary
to allow Merritt to retain her parental rights to M.A.H. Merritt further testified that although
she spends the night with Brown on weekends, she does not allow him to be around her
children. Considering all the evidence in the light most favorable to the jury’s findings, we
find that a reasonable trier of fact could have formed a firm belief or conviction that the
findings were true. In re J.F.C., 96 S.W.3d at 266.
      But when it comes to factual sufficiency, giving due consideration to evidence that the
factfinder could reasonably have found to be clear and convincing, we are unable to say that a
factfinder could reasonably form a firm belief or conviction that the movant’s allegations were
true. Id. (citing In re C.H., 89 S.W.3d at 25). The majority of the record recounts events
that occurred before October 18, 2000, like testimony about Merritt’s frequent moves.
      Chris, Heather, Linda Korenek (Chris’s mother), and Jackie Booe (S.W.’s father’s
neighbor, who had babysat M.A.H.) each testified about Merritt’s unhygienic care of M.A.H.
and about M.A.H.’s skin rashes. These witnesses said that the rashes were “hand, foot and
mouth” disease, which often occurs in the presence of unsanitary conditions. But they also
conceded that doctors and nurses had told them that the rash could be an allergic reaction to
soap or laundry detergent.
      Heather and Chris admitted that they (1) did not comply with court orders, (2) failed to
file income tax returns, (3) attempted to defraud the local school systems, and (4) prevented
Merritt from seeing or contacting M.A.H.—even over the telephone—because they did not like
David Brown. Chris and Heather did not secure health insurance for M.A.H. or their son,
despite their eligibility for the low-cost Children’s Health Insurance Program (CHIP). Heather
said that she occasionally left M.A.H. and her son in her mother’s care, even though her
mother is bipolar and is known to have disturbing episodes when not properly medicated. 
Heather also told the jury that she had ended M.A.H.’s speech therapy and that the family
decided to ignore recommendations that M.A.H. be seen by both a neurologist and a
psychologist, even though M.A.H. had marked expressive language delays and exhibited
detached behavior upon return to the Herzogs after visits with her mother.
      On the other hand, Merritt testified that she had been living with her grandmother, Bettye
Bowers, since November 2000, attending McLennan Community College and working part-time jobs to help support her family. Billy Neal, a CPS investigator who had never met
Brown, testified that Merritt had been the subject of several investigations, the majority of
which were ruled out. He said that he recommended termination of her rights—on behalf of
CPS—only because of her relationship with Brown, even though she had complied with the
Department’s safety plan for the children regarding Brown’s access to them.
      Moreover, Jan Bowers, Merritt’s aunt, testified that she had regular contact with Merritt,
that Merritt kept herself, her home and her children clean. She said that Merritt told her she’d
leave Brown if necessary to retain her parental rights. She recommended against termination
of Merritt’s parental rights. Bettye Bowers, Merritt’s grandmother, said that she was in good
health, despite her advancing age, and talked about her ability and willingness to help Merritt
with child care and financially.
      Under these circumstances, we find that the evidence is not factually sufficient to prove
that termination of Merritt’s parental rights was in the best interest of M.A.H. Merritt’s
factual-sufficiency issue is sustained.
 
 
 
MOTION FOR NEW TRIAL
      Having found the evidence factually-insufficient, we do not reach Merritt’s issue
contending that the court’s alleged pre-trial errors so prejudiced her that she should be entitled
to a new trial.
CONCLUSION
      Having found the evidence factually insufficient, we reverse the judgment and remand the
cause for a new trial.
 
 
                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Gray,
      Justice Vance, and 
      Justice Reyna
Reversed and remanded
Opinion delivered and filed July 28, 2004

[CV06]



'CG Times', serif">      In response to the motion for summary judgment, Bell asserted that the City Plan Commission
made a recommendation on August 22, 1989, to rezone Bell's property to make the current use
a nonconforming use. According to Bell, the motion for summary judgment failed to address the
damage caused by the defendants' attempts to rezone Bell's property. By affidavit, Bell also stated
that "[t]he placement of my property within this district has seriously harmed its commercial
market value and I have therefore been caused to suffer damages as a result thereof, both in my
ability to utilize that property and also my ability to sell this property."
      Three days before the hearing on the motion for summary judgment, the City and Falco filed
an amended answer asserting the statute of limitations as an affirmative defense to Bell's claim that
his property was wrongfully and unjustly included in the Sanger Heights Neighborhood
Conservation District.
      The trial court concluded that "there are no genuine issues as to any fact and all the
Defendants should be granted a judgment as a matter of law." Therefore, the court, noting that
Ringo had previously been dismissed from the lawsuit by Bell, granted summary judgment on all
of Bell's claims in favor of the City, the Association, and Falco.
      In a single point of error Bell contends that the trial court erred in granting the motion for
summary judgment. When the point of error simply complains, "The trial court erred in granting
the motion for summary judgment," all grounds expressly raised in the trial court may be argued.


 
The moving party must show that "there is no genuine issue as to any material fact and the moving
party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in
an answer or any other response."


 (Emphasis added).
      Bell argues that a genuine issue of material fact exists concerning whether his property was
wrongfully and unjustly included in the neighborhood conservation district and concerning whether
he was damaged as a result of attempts by the City, Falco, and the Association to have Bell's
property rezoned to prohibit the sale of automobiles. 
      On appeal, the Association argues that Bell's cause of action alleging that he was wrongfully
and unjustly included in the neighborhood conservation district was barred by the applicable two-year statute of limitation.


 However, because the issue of limitations was not expressly set out in
the motion for summary judgment, the Association may not rely upon limitations as a basis for
affirming the summary judgment.


 
      Nevertheless, we find that the inclusion of Bell's property in the neighborhood conservation
district was a valid exercise of the City's police powers authorized by Chapter 211 of the Texas
Local Government Code.


 A zoning ordinance, duly adopted pursuant to Chapter 211, is
presumed to be valid, and the burden is on the one seeking to prevent its enforcement, whether
generally or as to particular property, to prove that the ordinance is arbitrary or unreasonable
because it bears no substantial relationship to the health, safety, morals, or general welfare of the
community.


 
      First, the City of Waco Code does not require the termination of nonconforming uses unless
a nonconforming use is stopped for two or more years.


 Second, Ordinance No. 1987-5 simply
created the Sanger Heights Neighborhood Conservation District, making the property within the
district subject to the provisions of section 4.2303 of the zoning ordinances of the City.


 
      According to section 4.2303, a neighborhood conservation district is an overlay district
"intended to encourage the continued vitality of older residential areas of the city, to promote the
development of a variety of new housing of contemporary standards in existing neighborhoods,
and to maintain a desirable residential environment and scale."


 The permitted uses of property
within a neighborhood conservation district are those specified for the base district in which the
property is located unless modified by section 4.2303(d).


 Likewise, lot area, height, and yard
requirements are governed by the requirements of the base district unless modified by section
4.2303(e).


 No modifications were made to the C-3 base district until Ordinance No. 1990-60
was adopted by the City on December 18, 1990.


 Although automobile sales were prohibited on
C-3 property within a neighborhood conservation district, lots with frontage on a primary arterial
street were excepted from the restriction.


 Finally, property within a neighborhood conservation
district is subject to some additional restrictions identified by section 4.2303(f) as "building
relationships and scale" standards, "open space" standards, and "traffic and access" standards.


 
      By affidavit, Bell alleged that the placement of his property within the neighborhood
conservation district has seriously harmed its commercial value. On appeal, he argues that his
response to the motion for summary judgment creates a genuine issue of material fact. However,
the validity of an amendment to a comprehensive zoning ordinance presents a question of law,
rather than a question of fact.


 If reasonable minds may differ as to whether a particular zoning
ordinance has a substantial relationship to the public health, safety, morals, or general welfare,
the ordinance must stand as a valid exercise of the city's police power.


 
      From the record, it does not appear that Bell has discharged his burden to prove that the City
acted arbitrarily, capriciously, or unreasonably by imposing the additional standards of section
4.2303(f) on the Sanger Heights Neighborhood Conservation District. We hold that the trial court
properly determined, as a matter of law, that there is no genuine issue of material fact concerning
whether Bell's property was wrongfully and unjustly included in the neighborhood conservation
district.
      Next, we address Bell's contention that a genuine issue of material fact exists concerning
whether he was damaged as a result of attempts by the City, Falco, and the Association to have
Bell's property rezoned to prohibit the sale of automobiles. With the exception of the additional
standards imposed by section 4.2303(f), the only potential effect of section 4.2303 or Ordinance
No. 1987-5 on Bell's property is the possibility or Bell's apprehension that his property will be
rezoned in the future to prohibit the sale of automobiles.


 This future prospect is not a present
taking.


 A decrease in the market value of lands caused by the prospects of the City's future
implementation of a more restrictive neighborhood conservation plan favored by the Association,
which may or may not require condemnation proceedings when such a plan is implemented, does
not constitute a present taking.


 Such a decrease in the market value of land is often referred to
as noncompensable consequential damage that is incident to ownership of land.


 Therefore, we
find that the trial court properly determined, as a matter of law, that there is no genuine issue of
material fact concerning whether Bell was damaged as a result of attempts by the City, Falco, and
the Association to have Bell's property rezoned to prohibit the sale of automobiles.
      We overrule Bell's single point of error and affirm the summary judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed July 22, 1992
Publish